UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA       )
                               )
   v.                          )
                               )   Criminal No. 04-10112-RGS
JUSTIN TEAL,                   )
                               )
           Defendant.          )
_____)
```

### DEFENDANT'S MOTION FOR DOWNWARD
### DEPARTURE AND SENTENCING MEMORANDUM

Now comes the defendant, Justin Teal, in the above-numbered indictment and respectfully requests that this Honorable Court downward depart from the sentencing guidelines calculation appearing in the Pre-Plea Pre-sentence Report (PPSR) based upon the following grounds:

1. Under U.S.S.G. § 4A1.3, because the defendant is not a career offender;

2. Under U.S.S.G. § 4A1.3, because the criminal history score and his classification as a career offender over-represent the seriousness of the defendant's criminal history;

3. Under 18 U.S.C. § 3553(a)(6), the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

In support thereof, the defendant submits the within combined sentencing memorandum and motion for downward departure.

## I.   FACTS

### A.   Statement Of The Case

On October 31, 2005, defendant pled guilty to a superseding indictment charging five counts of Distribution of Cocaine Base (21 U.S.C. § 841(a)(1)), four counts of Playground Zone Violation (21 U.S.C. § 860 (a)), four counts of Aiding and Abetting (18 U.S.C. § 2), and one count of Use of a Juvenile (21 U.S.C. § 861(a)). The defendant distributed 1.2 grams of "crack" cocaine to an undercover Boston Police Officer within 1000 feet of the Little Scoobie

Playground on July 1, 2003. PPSR at ¶¶ 12,13. The defendant distributed 1.5 grams of "crack" cocaine to an undercover Boston Police Officer within 1000 feet of the Little Scoobie Playground on July 8, 2003. PPSR at ¶ 14. The defendant distributed .71 grams of "crack" cocaine to an undercover Boston Police Officer within 1000 feet of the Little Scoobie Playground on July 23, 2003. PPSR at ¶ 15. The defendant was present during the sale of 1 gram of "crack" cocaine by a juvenile to an undercover Boston Police Officer on August 14, 2003. PPSR at ¶ 16-19.

**B.   Defendant's Guideline Calculations**

After conducting a pre-sentence investigation, the probation department determined that the defendant qualifies as a career offender. PPSR at ¶¶ 41,42,43. Three convictions serve as predicates for the defendant's career offender status: (1) an armed robbery/A&B/ADW/ firearm conviction stemming from an offense committed on January 21, 2000, when the defendant was 19 years old (PPSR at ¶ 46); (2) an A&BDW conviction stemming from an offense committed approximately four months later on May 19, 2000 (PPSR at ¶ 47); and (3) an A&BDW / assault to murder conviction stemming from an offense committed approximately three months later on August 15, 2000 (PSR at ¶ 48).

As a career offender, defendant's adjusted offense level is 31 and his criminal history category is VI. PPSR at ¶ 89. The resulting guideline range, and the advisory guideline sentence this Court is to impose if a downward departure is not granted, is 188 to 235 months (15.5 to 19.5 years). PPSR at ¶ 89. Absent the advisory career offender provision, the guideline range applicable to the defendant would be 84 to 105 months.[1]

---

[1] Defendant's offense level is 23, calculated as follows:

| | |
|---|---|
| Base offense level (U.S.S.G. s. 2D1.1(8)(at least 4G but less than 5G Cocaine Base)) | 24 |
| Enhancement (protected area (Scoobie Playground)), | + 2 |
| | 26 |
| Reduction for Acceptance of Responsibility | - 3 |
| Adjusted offense level | 23 |

-2-

### C. Defendant's Background

The following information regarding the defendant's life circumstances is taken from the pre-sentence report, as well as from letters from the defendant, defendant's family and family' friends, a Suffolk Superior Court Transcript, certified court dockets from South Boston District Court, Suffolk Superior Court and Norfolk Superior Court and affidavits from Francis Jackman, Esq., JoAnn Donovan, Esq. and Elliot Levine, Esq. The letters are attached as Addendum A; the Suffolk Superior Court Transcript is attached as Addendum B; the certified court dockets are attached as Addendum C, D, and E, respectively; and the attorney affidavits are attached as Addendum F, G, and H, respectively..

Defendant is a twenty-five year old man, who was born in Boston, Massachusetts to William and Beverly Teal. The defendant's father, William, is fifty-five years old and worked for thirty-three years for the John Hancock Insurance Company as a print technician. PPSR at ¶ 60. He was recently diagnosed with Non-Hodgkins Lymphoma and decided to retire. His cancer is currently in remission. Addendum A. Beverly Teal is fifty-two years old and works as a paralegal for Boston Legal Services. PSR at ¶ 61. The defendant has a brother, Jeremy, who is twenty years old and attends Bunker Hill Community College. PPSR at ¶ 62. By all accounts the defendant comes from a loving and supportive family. His parents were fairly strict and encouraged him to do well in school. Addendum A. The defendant had a fine childhood, attended Boston Public Schools and worked as a child model for department stores from age eight to twelve years. At age twelve, his mother stopped his modeling because it took too much time away from school. Addendum A.

The defendant experienced his first problems in his early teens when he acquiesced to peer-pressure and the reckless life on the inner-city streets. He began to associate with the wrong crowd and was subjected to drugs and violence. PPSR at ¶ 65. It was this pressure that

---

Defendant's criminal history score is 12, placing him in CHC V (PPSR at ¶ 53), for a resulting guideline range of 84 to 105 months.

caused him to shun school and its valuable lessons for the tough, street image that was valued in his neighborhood. Addendum A. The defendant began abusing alcohol and heavy amounts of marijuana at age thirteen. PPSR at ¶ 76. During his teen years several of his friends were murdered by other boys in his community. The defendant became overwhelmed by feelings of paranoia of becoming the next victim in his neighborhood. PPSR at ¶ 65. The defendant's caring parents were unable to rescue him from the violent and drug-infested streets during these formative years. His abuse of alcohol and marijuana quickly escalated into abusing cocaine on a daily basis. PSR at ¶ 77. At age nineteen, he was arrested for possessing cocaine. PPSR at ¶ 45. At this time the defendant did not seek treatment for his alcohol and drug problem. PPSR at ¶¶ 76,77.

At the age nineteen and into his twentieth year the defendant's young life was spiraling out of control. It was at this time that the defendant committed a series of crimes which now serve as his career offender predicates. PPSR at ¶ ¶ 46, 47, 48. On January 21, 2000, the defendant, armed with a firearm and in the company of another young man, was allowed to enter the house of Woodson, a person known to the defendant. The defendant asked Woodson for marijuana. As Woodson went into his closet to retrieve the marijuana, the defendant pulled out a firearm, pointed it at Woodson and another individual and proceeded to rob both young men of their marijuana, money, clothes and jewelry. The defendant was arrested shortly thereafter. Addendum B at 24-26. On May 19, 2000, the defendant struck a gypsy cab driver in the face with a bottle because he would not give him a ride. PPSR at ¶ 47. The defendant was arrested having remained at the scene of the crime. PPSR at ¶ 47. Approximately three months later, on August 15, 2000, the defendant was at Labor Ready in Quincy, Massachusetts. PPSR at ¶ 48. Labor Ready is a company that supplies temporary workers to different work places throughout the state. While at Labor Ready, the defendant observed an individual with whom he had numerous fights against in the past. Both young men went outside and began to fight. Both individuals possessed knives during this fight. PPSR at ¶ 48. During the fight, the defendant

-4-

stabbed this other young man. PPSR at ¶ 48. The defendant was arrested on a warrant shortly thereafter.

On December 22, 2000, the defendant pled guilty to Assault & Battery Dangerous Weapon in South Boston District Court before Judge Singer and received a two-year house of correction sentence. Addendum C. On December 28, 2000, the Defendant pled guilty to Armed Robbery (two counts), Dangerous Weapon/ Possess Gun, Class D/Distribute, Assault & Battery and Assault Dangerous Weapon (two counts) before Judge Ball in Suffolk Superior Court. Addendum D. The defendant received a two-year house of correction sentence concurrent with the sentence now serving. Addendum D. On January 5, 2001, the defendant pled guilty to Armed Assault/Murder and Assault & Battery Dangerous Weapon before Judge Lauriat in Norfolk Superior Court. Addendum E. The defendant received a two-year house of correction sentence concurrent with sentence presently serving. Addendum E. This two-year house of correction sentence was determined through the corroboration of the three attorneys that were representing the defendant at this time. Addenda F, G and H. The three cases were consolidated for sentencing and the defendant received concurrent sentences to the house of correction for two years. Addenda F, G and H.

## II.    ARGUMENT

### A.    The Defendant Is Not A Career Offender.

The Probation Department determined the defendant to be a career offender based on above-outlined three predicate offenses. PPSR at ¶ 54. As a result of these three predicate offenses the defendant received concurrent sentences to the house of correction for two years. Addenda C, D and E. Pursuant to the Guidelines, two prior felony convictions means that: "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense..., and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2(c) (emphasis added). The court transcripts indicate that the defendant received three, two-year house of correction sentences and

-5-

that these sentences were to be concurrent. Addenda C, D and E. The three sentences resulted in a total imprisonment term of two years. Where prior sentences are imposed in related cases, they are treated as one sentence for the purpose of § 4A1.1 (a), (b), or (c). See U.S.S.G § 4A1.2(a)(2). Prior sentences are related if, among other things, they were consolidated for trial or sentencing. See § 4A1.2, comment. (n. 3).

The defendant's three predicate state cases were consolidated for sentencing. The defendant was essentially sentenced simultaneously to two years in the house of correction. Addenda C, D and E. The defendant's three attorneys on these predicate state offenses corroborated with each other to produce a single house of correction sentence. Addenda F, G and H. These predicate sentences are related and cannot be assessed separately under the guidelines. United States v. Delvecchio, 920 F.2d 810 (11th Cir. 1991); United States v. Dorsey, 888 F.2d 79 (11th Cir. 1989). Because the predicate charges were consolidated for sentencing, they are treated as a single sentence and not counted separately pursuant to the career offender guidelines. See United States v. Charles, 209 F.3d 1088 (8th Cir 2000). Therefore, the defendant is not a career offender.

**B.  This Court Has The Discretion To Invoke U.S.S.G. § 4A1.3 To Depart Downward In A Career Offender Case, And Should Do So In This Case.**

Should this Court find that the defendant does qualify as a career offender, the defendant seeks a downward departure to the now advisory career offender guidelines. In United States v. Lindia, 82 F.3d 1154 (1st Cir. 1996), the First Circuit held that a sentencing court may depart downward from the career offender guideline range on the authority of U.S.S.G. § 4A1.3. This guideline provides for a downward departure when a defendant's criminal history category "significantly overrepresents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes". Because the career offender guideline increases both the defendant's offense level and criminal history score, a departure under § 4A1.3 can reduce either or both of these scores. See United States v. Shoupe, 35 F.3d 835, 837 (3rd Cir. 1994). In analyzing whether a normal career offender's history truly reflects a history of

-6-

recidivism, courts look to a variety of factors, including: how old the predicate convictions are; the seriousness of the convictions (as gleaned, for example, from the sentences a defendant received); the temporal proximity of the convictions; and whether the convictions occurred in a defendant's troubled youth.

In Shoupe, the court held that a sentencing court's consideration of a defendant's age and immaturity at the time of the predicate convictions, as well as the close temporal proximity between the convictions, was appropriate to the determination of whether to depart from the career offender guidelines. Id. at 447; see also, United States v. Bowser, 941 F.2d 1019 (10th Cir 1991). The facts in Bowser are similar to this case in that the defendant was convicted of two hand-to-hand sales of 9.3 grams of crack cocaine to an undercover agent. The defendant was determined to be a career offender by probation because of two prior convictions of crimes of violence. When the defendant was twenty years old, he committed two armed robberies with a gun, approximately two months apart and received concurrent sentences to state prison for a period of five to twenty years. Id. at 1022. The Court in Bowser reasoned that the unique combination of factors in "defendant's criminal history was not considered sufficiently by the Sentencing Commission to justify rigid application of the career offender criminal history categorization". Id. at 1025 (*emphasis added*). The court held that a downward departure was appropriate. Id.

The circumstances of defendant's case closely parallel those set forth above, and likewise show that defendant's record is not that of a true recidivist. See id. The defendant's three previous convictions were committed when he was only in his nineteenth and twentieth year, within seven months of each other and were punished by concurrent sentences to the house of correction. The two predicate crimes which resulted in convictions in Massachusetts Superior Courts were committed against acquaintances of the defendant. PPSR at ¶¶ 46,48. The Suffolk Superior Court armed robbery conviction involved the theft of numerous bags of marijuana. Addendum B. The Norfolk Superior Court armed assault conviction involved the stabbing of a familiar acquaintance, whom at the time of the fight also possessed a knife. PPSR at ¶ 48.

-7-

Without minimizing the seriousness of these two crimes, the fact that the defendant received a rare, house of correction sentence from Suffolk and Norfolk Superior Courts is evident that the defendant's age, education level and the nature of these offenses weighed heavily in the Courts' decision. The fact that the defendant was treated with leniency in these Courts may be taken into account by this Honorable Court when assessing the seriousness of defendant's prior record.

In sum, defendant's prior record qualifies him as a career offender because of three offenses that he committed within seven months of each other at the ages of nineteen and twenty. As such, defendant's case falls outside the "heartland" of career offender cases, and warrants a downward departure under U.S.S.G. § 4A1.3. See United States v. Lindia, 82 F.3d 1154, 1156 (1st Cir. 1996) ("[w]hen faced with a departure motion in a career offender case, as in other cases, the court's experience and unique perspective will allow it to decide if the case before it falls outside the guideline's 'heartland' warranting departure").

C.  **Applying The Statutory Sentencing Factors To The Facts Of This Case.**

The defendant notes that the majority opinion set forth in United States v. Booker, 125 S.Ct. 738, 748-750(2005) clearly indicates that the guidelines are advisory and this Court must consider the guideline ranges as well as factors set forth in Title 18 U.S.C. § 3553a.

The new mandatory principle as set forth appears to be a limiting one in that the sentence must be "sufficient but not greater than necessary to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

A.  to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

B.  to afford adequate deterrents to criminal conduct;

C.  to protect the public from further crimes of the defendant, and;

D.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

1)   The nature and circumstances of the offense as well as the history and characteristics of the defendant.

2)   The kind of sentences available.

3)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

4)   The need to provide restitution to any victims of the offense.

The defendant pled guilty to distributing 3.41 grams of cocaine base to two undercover officers (PPSR at ¶¶ 12 to 15) and to aiding and abetting Stephen Walker, a seventeen year old juvenile, during Walker's sale of 1 gram to an under cover officer (PPSR at ¶ 18, ¶ 19). This aiding and abetting of Walker, consisted of the defendant telling Walker not to deal on the street and pointing to an alley while stating "either do it over there or in the hallway". PSSR at ¶18. These distributions took place on Copeland Street, within 1000 feet of the Little Scoobie playground. During the time of these distributions, the defendant had a serious substance abuse problem and these offenses were related to supplying his serious drug addiction. See PPSR ¶¶ 76, 77.

Section 3553(a)(1) mandates that the Court consider the defendant's street-level dealing of less than five grams along with his history and characteristics to determine a just sentence. As referenced above, the defendant without minimizing his violent past, denies that he is a career offender pursuant to the provisions of USSG § 4B1.1. The defendant requests that this Honorable Court sentence him as it would were the career enhancements not applicable. See United States v. Collins, 122 F.3d 1297, 1309 (10th Cir. 1997) (district court sentenced defendant within range that would have applied without the career offender enhancement); United States v. Bowser, 941 F.2d 1019, 1026 (10th Cir. 1991). With an offense level of 23, and Criminal History Category of V, defendant's resulting non-career offender guideline range is 84 to 105 months. Defendant requests that this Honorable Court impose a fair and reasonable sentence outside this guideline range and not exceed the minimum guideline range of 84 months.

In support of this request, defendant submits that pursuant to Section 3553(a)(6), it is appropriate for a sentencing court to avoid unwarranted sentencing disparities among defendants

with similar records who have been found guilty of similar conduct. See Ferrara v. United States, 372 F.Supp. 2d 108, 122 (D. Mass. 2005); United States v. Henlsley, 363 F.Supp. 2d 843, 845 (W.D. Va. 2005) (downward variance from guideline range under authority of § 3553 appropriate to equalize sentences of codefendants who were guilty of the same criminal conduct and who had similar criminal histories). During the course of this Warren Gardens investigation, law enforcement agents made forty-seven controlled purchases of crack cocaine from twenty-four individuals, fifteen of those individuals were charged in federal court. PPSR at ¶4. The defendant and the majority of the individuals arrested were considered street-level dealers. PPSR at ¶ 10. According to the Pre-plea Presentence Report, eight of the fifteen defendants in the federal court have received sentences. PPSR at ¶¶ L to T. These sentences range from 24 months to 84 months. The majority (five defendants) received sentences ranging from 46 to 57 months. PPSR at ¶¶ P to S. It is believed that at least four of these related defendants (Jermaine Anderson, Corey Smith, Jerome Lassiter and Kevin Vickers) had a criminal history category V similar that of the defendant. Both Jermaine Anderson and Corey Smith received sentences of 46 months. PPSR at ¶ P. Jerome Lassiter received a sentence of 57 months. PPSR at ¶ R. To date Kevin Vickers received the harshest sentence of 84 months. PPSR at ¶ S. Similar to the defendant, Vickers was considered a career offender by the probation department and his career offender guidelines ranged from 188 to 235 months. See Sentencing Memorandum of Kevin Vickers.

Defendant requests this Honorable Court to sentence him as a street- level dealer guilty of distributing less than five grams of cocaine base and for said sentence to be in parity with the majority of related defendants who have been sentenced by this court to 46 to 57 months.

## III. CONCLUSION

For the foregoing reasons, This Honorable Court should impose a just sentence pursuant to Title 18 U.S.G. Section 3553(a) outside the guideline range and in parity with the majority of related, sentenced defendants of 46 to 57 months and not to exceed the defendant's minimum guideline range of 84 months incarceration.

JUSTIN TEAL,

By his attorney,

/S/ *James Greenberg*
James Greenberg, BBO # 565631
220 Commercial Street, 1st Floor
Boston, MA 02109
617/557-4444

*by permission of Atty*

## CERTIFICATE OF SERVICE

I, James Greenberg, hereby certify that a true copy of the above document was served upon Assistant United States Attorney David Tobin, and upon United States Probation Officer Tricia Marcy, by delivery on January 30, 2006.

/S/ *James Greenberg*
James Greenberg

*by Permission of Atty*

-11-